**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **BRYAN SILVA, PH.D.,** | 1:19-cv-00795-LJO-EPG |
| **Plaintiff,** | |
| **v.** | **ORDER RE DEFENDANT'S MOTION TO STRIKE AND DISMISS PLAINTIFF'S COMPLAINT; MOTION FOR ORDER REQUIRING PLAINTIFF TO POST SECURITY BEFORE PROCEEDING** |
| **YOSEMITE COMMUNITY COLLEGE DISTRICT, a government entity for the State of California, and DOES 1 – 100, inclusive,** | |
| **Defendants.** | **(ECF Nos. 7–8)** |

## I. <u>INTRODUCTION</u>

Plaintiff Bryan Silva, Ph.D., formerly known as Frank Drummond, Ph.D., raises various state and potentially federal claims. Defendant Yosemite Community College District filed a motion to dismiss, motion to strike, and motion for order requiring Plaintiff to post security. Plaintiff requested the opportunity for discovery. The Court has reviewed the facts and evidence in the record in light of applicable authorities and only discusses here the facts and arguments that are material and dispositive. The Court has determined the motion to dismiss, motion to strike, request for discovery, and motion for order requiring Plaintiff to post security before proceeding are suitable for decision based on the papers under Local Rule 230(g). For the reasons stated below, Defendant's motion to dismiss is GRANTED without leave to amend.

## II. <u>FACTUAL BACKGROUND</u>

Plaintiff's Complaint arises from his arrest over ten years ago. Plaintiff is a tenured professor in the Administration of Criminal Justice Department at Modesto Junior College. *See* ECF No. 1 ¶ 1. On August 28, 2009, Plaintiff was arrested at a staff meeting at Modesto Junior College. *See id.* ¶ 13. On November 25, 2009, the Stanislaus County District Attorney's Office charged Plaintiff with certain crimes.[1] *See* ECF No. 8-3, Ex. A at 6–7. Defendant placed Plaintiff on unpaid leave under Education Code section 87736. *See id.* ¶ 13. Plaintiff's criminal trial concluded around April 2015. *See id.* ¶ 14. The District Attorney did not re-try the case and subsequently dismissed the criminal charges against Plaintiff. *See id.* This action is Plaintiff's third lawsuit against Defendant.

### A. <u>The First Action</u>

Plaintiff, formerly known as Frank Drummond, Ph.D., filed a lawsuit against Defendant in the Stanislaus County Superior Court on February 13, 2015. *See* ECF No. 8-3, Ex. B at 8–25 (hereinafter "First Action"). The First Action appears to cover the period between August 28, 2009 and July 31, 2015 (ongoing). *See id.* at 36, 38. Plaintiff brought claims for: (1) violation of the California Government Code; (2) violation of the California Education Code; (3) Section 1983; (4) wrongful discharge in violation of public policy; (5) "breach of employment contract (wrongful discharge)"; (6) retaliation[2]; (7) breach of the implied covenant of good faith and fair dealing; (8) violation of Business

---

[1] Defendant's Request for Judicial Notice of state court records and documents from the EEOC and California Department of Fair Employment and Housing is granted. ECF No. 19; *see Hunt v. Check Recovery Sys. Inc.*, 478 F. Supp. 2d 1157, 1160–61 (N.D. Cal. 2007) ("Judicial notice may be taken of 'adjudicative facts' such as court records [and] pleadings . . . .").

[2] Plaintiff alleged Defendant discharged Plaintiff for opposing discriminatory practices. *See* ECF No. 8-3 at 18 ¶ 98. Yet in the same complaint, Plaintiff alleged that Defendant suspended Plaintiff without pay "as a result of the arrest and subsequent criminal charges." *Id.* ¶ 10. He further alleged in the same complaint, "on or about December 14, 2009, after formal criminal charges were filed against Plaintiff, Defendant then again removed Plaintiff from his teaching position, and terminated his salary and benefits, all without a hearing." *Id.* ¶ 14.

and Professions Code § 17200, *et seq.*; (9) intentional infliction of emotional distress for the "unlawful harassment, retaliation, conduct towards and termination of Plaintiff"; (10) negligent infliction of emotional distress; and (11) "public entity liability: negligence." *See id.* at 8–25. On December 30, 2015, the Stanislaus County Superior Court sustained Defendant's demurrer to Plaintiff's First Amended Complaint for failure to state a cause of action and sustained Defendant's motion to strike, with the exception of allowing Plaintiff to amend the complaint only for damages under the Education Code. *See* ECF No. 7-4 at 67.

On an unknown date, Plaintiff filed a Second Amended Complaint in the First Action with the same claims as the original complaint. *See* ECF No. 8-3, Ex. C at 51. Among other relief, Plaintiff sought "lost benefits, including but not limited to retirement contributions." *Id.* at 50. Plaintiff specifically alleged he "suffered damages including, deprived of about 5 years of back pay and benefits between December 14, 2009 through July 31, 2015, including his base salary, additional over-load pay, retirement contributions and lost increased value therein, medical coverage and expenses, [and] incurred interest for loans he was forced to take . . . ." *Id.* at 38.

The summary judgment hearing in the First Action took place on June 12, 2018. *See* ECF No. 8-3, Ex. D at 53. On July 20, 2018, the Stanislaus Superior Court granted summary judgment in favor of Defendant and "against Plaintiff as to the entire action and as to all the claims contained in Plaintiff's Complaint." ECF No. 8-3, Ex. D at 53–54. The Stanislaus Superior Court confirmed its tentative ruling and attached a copy of the ruling to its order. *Id.* at 53, 59 ("Defendant has sufficiently demonstrated that the full amount of compensation owed to Plaintiff has been paid and Plaintiff is unable to establish any further liability on the part of Defendant.").

**B.    The Second Action**

While the First Action was ongoing, Plaintiff filed a second lawsuit against Defendant and another Modesto Junior College professor, Steven Choi, on August 19, 2016. ECF No. 8-3, Ex. E at 64 (hereinafter "Second Action"). The Second Action covers the period between August 28, 2009 and

March 2017, ongoing. *Id.* at 64, 108. Plaintiff's Second Action alleges, among other things, that he suffered harassment upon his return to work at Modesto Junior College. *See generally id.* For example, Plaintiff alleged Defendants "discriminated against him because he was either accused of a crime and/or now refuses to resign from his position." ECF No. 8-3, Ex. E ¶ 13. Plaintiff alleged that Defendant would not restore his position as department chair and averred that the Defendant erroneously stated it no longer had positions of department chair. *See id.* Plaintiff also complained that he did not receive his entitled course load and instead received classes intended to burden him. *See id.*

In his Second Action, Plaintiff raised causes of action for: (1) assault; (2) harassment; (3) libel/slander; (4) breach of implied covenant of good faith and fair dealing; (5) intentional infliction of emotional distress; (6) negligent infliction of emotional distress; (7) negligence; (8) negligent retention of employee; (9) public entity liability for acts of employees; (10) hostile work environment; and (11) failure to prevent hostile work environment and harassment. *See id.* at 64.

On an unknown date, Plaintiff filed a Third Amended Complaint in the Second Action. *See* ECF No. 8-3, Ex. F at 95. Plaintiff added a claim for "disparate impact/breach." *Id.* Plaintiff asserted that the "District had an employment practice of misrepresenting to plaintiff the true status of his position, chair of the department therein, and assignment and preparation of courses by employees." *Id.* ¶ 101. Plaintiff alleged that on "August 18, 2015, plaintiff demanded in writing from the District a full reinstatement with all benefits and compensation owed to him from the District." *Id.* ¶ 52. Plaintiff further alleged that "as of March 30, 2017, new and additional information has been discovered in a massive document production by the District in the First Action." *Id.* ¶ 56. Plaintiff alleged that "Defendants made written statements to third parties. 1000+ Documents containing said written statements are under review, and plaintiff will amend this action when and as specifically discovered and identified." *Id.* ¶ 85. Plaintiff further alleged "Defendants published false statements of fact without privilege or permission of any sort, consisting of statements that depict plaintiff as an immoral and unethical individual, grounded in the allegations made against plaintiff as they related to his criminal

4

matter, though he successfully defended said matter." *Id.* ¶ 87. Plaintiff asserted that the "statements [were] defamatory and harmed plaintiff's personal and business reputations," and that Defendants "acted with malice and intent to harm plaintiff in his employ." *Id.* ¶¶ 92, 95.

Plaintiff contended he "was subjected to unwanted harassing conduct because he was a male and of age, in the context of criminal charges being dismissed against plaintiff." ECF No. 8-3 ¶ 173. Plaintiff claimed that "Defendants, since plaintiff was first reinstated and resumed his faculty position, repeatedly verbally abused and harassed plaintiff." *Id.* ¶ 174. Moreover, Plaintiff alleged "Defendants were inconsiderate and in violation of California employment laws in their treatment of Plaintiff." *Id.* ¶ 175. Plaintiff also alleged defendants "systematically and repeatedly abused and harassed plaintiff, shunned and humiliated him [since August 28, 2009]." ECF No. 8-3 ¶ 197. "Defendants were inconsiderate and in violation of California State and Federal laws in their treatment of Plaintiff." *Id.* ¶ 199.

Plaintiff alleged he did not have access to a locked storage room beginning around July 27, 2015, and again around October 1, 2015. *See id.* ¶¶ 24, 36. Plaintiff further complained of the dean's spring 2016 teaching schedule. *See id.* ¶¶ 25–27. Plaintiff claims that the dean did not collaborate with him in creating the schedule. *See id.* ¶ 27. Plaintiff also alleged wrongdoing because he was not able to use the program's shooting simulator in his classes. *See id.* ¶ 38. Plaintiff further alleged that other professors made equipment requests without Plaintiff's knowledge. *See id.* ¶ 39.

On December 22, 2017, the Stanislaus County Superior Court held a hearing for Defendant's and Mr. Choi's demurrers to Plaintiff's Third Amended Complaint in the Second Action and motion to strike. *See* ECF No. 8-3, Ex. G at 129. On January 9, 2018, the Stanislaus Superior Court sustained without leave to amend Defendant's demurrer to Plaintiff's Third Amended Complaint. In its ruling, the court wrote:

> The Court takes judicial notice of the fact that Plaintiff failed to file a timely claim with Defendant . . . pursuant to and as required by the Government Claims Act . . . . Plaintiff was granted leave to amend his Second Amended Complaint to allege additional facts to excuse his compliance with this requirement and fails to allege such facts in his Third Amended Complaint. The Court concludes that he is unable to allege such facts. In his

Opposition . . . Plaintiff concedes that he failed to file a timely claim, arguing that the 'continuing violations doctrine' applies under these circumstances to salvage his causes of action based on discrete acts alleged to have been committed outside the applicable statute of limitations. It does not. Therefore, all of the causes of action alleged in the Third Amended Complaint are barred. . . . In accordance with the above ruling sustaining Defendants' Demurrers to Plaintiff's Third Amended Complaint, **JUDGMENT** is entered in favor of the Defendants Yosemite Community College District and Steven Choi.

ECF No. 8-3, Ex. G at 130–31 (emphasis in original).

## C.     This Case – The Third Action

On January 4, 2019, Plaintiff filed a claim against Defendant pursuant to the California Government Tort Claims Act. *See* ECF No. 8-3, Ex. K at 187. On March 13, 2019, Defendant rejected Plaintiff's January 4, 2019 claim, instructing Plaintiff that any court action must be filed within six months from the date of the rejection notice.[3] *See* ECF No. 8-3, Ex. L at 198. On June 6, 2019, Plaintiff filed the instant action—his third lawsuit—against Defendant. *See generally* ECF No. 1 (hereinafter "Third Action"). The Third Action appears to cover the time period between August 28, 2009, and May 6, 2019, ongoing. *See* ECF No. 1 at 16. In his Third Action, Plaintiff raises claims for: (1) harassment; (2) disparate impact; (3) hostile work environment; (4) failure to prevent harassment, discrimination, and retaliation; (5) employment discrimination; (6) disparate treatment; (7) tortious interference with

---

[3] Plaintiff initially filed a claim against Defendant pursuant to the California Tort Claims Act on September 29, 2017, which Defendant rejected as untimely. *See* ECF No. 8-3, Ex. I at 167; ECF No. 8-3, Ex. J at 183–85. Defendant argues that Plaintiff filed the January 4, 2019, Government Claim in an effort to sidestep the untimeliness of his September 29, 2017, claim. *See* ECF No. 8-1 at 19–21. Because this filing requirement does not apply to Federal Civil Rights Act claims or California Fair Employment and Housing Act claims, the Court need not address this argument because this Order primarily focuses on the validity of Plaintiff's federal claims that would afford this Court's subject matter jurisdiction. *See Felder v. Casey*, 487 U.S. 131, 134 (1988); *Williams v. Horvath*, 16 Cal. 3d 834, 842 (noting in Section 1983 lawsuit: "it is clear that the supremacy clause will not permit a like abrogation of the perquisites of a federal civil rights litigant."); *Garcia v. L.A. Unified Sch. Dist.*, 173 Cal. App. 3d 701, 709–10 (1985) (acknowledging Title VII and FEHA claims not subject to filing requirement of Government Tort Claims Act but finding plaintiff's claim could not be construed as Title VII claim).

economic advantage; (8) negligent interference with economic advantage; (9) injunctive relief; and (10) declaratory relief. *See generally* ECF No. 1.

A significant portion of the Third Action comprises near-verbatim allegations from the dismissed Second Action. The Court will not repeat them all but includes some examples for reference. *Compare* Third Action ¶¶ 22, 34 (complaining of locked storage closet in July 2015 and October 2015), *with* Third Amended Complaint in Second Action, Ex. F ¶¶ 24, 36 (same); *compare* Third Action ¶¶ 30–31 (alleging issues regarding Spring 2016 teaching schedule) *with* Third Amended Complaint in Second Action, Ex. F ¶¶ 25–27 (same); *compare* Third Action ¶ 38 (alleging inability to use the program's shooting simulator around October 2015) *with* Third Amended Complaint in Second Action, Ex. F ¶ 38 (same); *compare* Third Action ¶ 59 (alleging dean refuses to make him department chair) *with* Third Amended Complaint in Second Action, Ex. F ¶ 13 (same).

Plaintiff raises a handful of "new" allegations that Plaintiff contends are "new and ongoing wrongs committed and perpetuated by defendants." *See* ECF No. 10 at 1. Among these are: (1) in April 2018, a dean allegedly yelled at Plaintiff with her office door open about contacting the chancellor regarding the shooting simulator that had not been installed (ECF No. 1 ¶ 48); (2) the dean ignored Plaintiff's inquiry about installing a shooting simulator (*id.* ¶ 49); (3) the dean acknowledged wrongdoing for yelling at Plaintiff with her door open (*id.* ¶ 50); (4) the dean admitted the need for a department lead, which was Plaintiff's prior role, but that Plaintiff was "not respected" and needed to earn respect before being assigned as lead (*id.* ¶ 52); (5) the department sold firearms at an auction without Plaintiff's input (*id.* ¶ 53); (6) Plaintiff's employee file is "defamatory," which includes "criminal related information . . . and omits the numerous awards and accolades earned," and "would harm [Plaintiff] should he seek employment elsewhere" (*id.* ¶ 54); (7) in August 2018, the dean e-mailed the entire division about "two white male instructors" who had received awards and recognized Plaintiff's award on a lobby TV monitor but did not e-mail the division about Plaintiff's award until a month later in September 2018 (*id.* ¶ 55); (8) on Halloween 2018, another faculty member asked

Plaintiff "what the fuck is this?" in reference to Plaintiff's costume as a "military dude" and then walked away (*id.* ¶ 56); (9) there was a locked study area that the dean later unlocked for limited periods of time around fall 2017 (*id.* ¶ 57); (10) Defendant has not updated Plaintiff's retirement benefits, which shows Plaintiff as inactive for the years 2011 to 2015 and Defendant misinforms or ignores Plaintiff's requests for payroll information and files (*id.* ¶ 58); (11) Plaintiff's spring 2019 schedule had seven classes instead of eight; (12) on or around May 1, 2019, the dean created a new section for a heavily waitlisted class and appointed another professor to teach that section despite Plaintiff's senior faculty status and that Plaintiff recruited students for the class; and (13) Plaintiff has not been paid for contracted courses and "[i]nterest owed for the time of unpaid administrative [leave] . . . ." *Id.* ¶ 63.

**D.    The Motions**

Defendant filed a motion to dismiss Plaintiff's previously adjudicated claims under Federal Rule of Civil Procedure 12(b)(6) and a motion to strike under Rule 12(f). *See* ECF No. 8-1 at 7 n.16. Defendant requests the Court to "strike or dismiss all of the barred allegations and claims thereon, and dismiss all of Plaintiff's claims to the extent they are based on the 'new' allegations." *Id.* Defendant also filed a motion for order requiring Plaintiff to post security before proceeding. *See generally* ECF No. 7-1. Plaintiff avers that he is entitled to discovery if the Court considers material outside of the pleadings on a Rule 12(b)(6) motion. *See* ECF No. 10 at 10.

### III. <u>STANDARD OF DECISION</u>

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions." *Twombly*, 550 U.S. at 555 (internal citations omitted). Thus, "bare assertions... amount[ing] to nothing more than a 'formulaic recitation of the elements'... are not entitled to be assumed true." *Iqbal*, 556 U.S. at 681. "[T]o be entitled to the presumption of truth, allegations in a complaint ... must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). In practice, "a complaint...must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562.

For purposes of dismissal under Rule 12(b)(6), the court generally considers only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice, and construes all well-pleaded material factual allegations in the light most favorable to the nonmoving party. *See Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012); *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (per curiam). Res judicata may properly be raised in a Rule 12(b)(6) motion to dismiss based upon the court taking judicial notice of the record in the prior case where no disputed issues of fact appear. *See Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984).

## IV. <u>DISCUSSION</u>

Plaintiff raises a garden variety of state law claims and claims that could conceivably be considered federal claims.[4] The Court limits its analysis to claims that potentially raise federal questions.

---

[4] Plaintiff does not state the basis for this Court's *jurisdiction* in his complaint. *See generally* ECF No. 1 ¶ 11 (alleging why *venue* is proper). There is no basis for diversity jurisdiction because Plaintiff is a California resident and Defendant's principal place of business is in California. *See id.* ¶¶ 1–2. Plaintiff does not cite any federal statute as the basis for federal jurisdiction. *See generally id.* The closest Plaintiff gets to federal question is: "Defendants were inconsiderate and in violation of California State and Federal laws in their treatment of Plaintiff." *Id.* ¶ 134. Plaintiff cites as the basis for his employment discrimination claim "Title XII." *Id.* at 27. While the Court does not recognize "Title XII," the Court will nevertheless

These claims fail, however, under the doctrine of res judicata and Rule 12(b)(6). Thus, the Court need not address the remaining state law claims.

## A.    <u>Res Judicata</u>

A federal court must give a state court judgment the same preclusive effect that it would be given under the law of the state in which judgment was entered. *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984); *Fowler v. Guerin*, 899 F.3d 1112, 1119 (9th Cir. 2018). Plaintiff filed the First and Second Actions in California state court. Therefore, this Court will look to California law to determine whether Plaintiff's claims are precluded.

California law defines two main forms of preclusion: res judicata (claim preclusion) and issue preclusion (collateral estoppel). *See Rodriguez v. City of San Jose*, 930 F.3d 1123, 1130 (9th Cir. 2019). Under California's claim preclusion doctrine, "a valid, final judgment on the merits precludes parties or their privies from relitigating the same 'cause of action' in a subsequent suit." *San Diego Police Officers' Ass'n v. San Diego City Emps.' Ret. Sys.*, 568 F.3d 725, 734 (9th Cir. 2009) (internal citations omitted). California's claim preclusion doctrine is based on a primary rights theory. *See id.*; *Reyes v. Kaiser Permanente*, 782 F. App'x 605, 606 (9th Cir. 2019). In other words, "if two actions involve the same injury to the plaintiff and the same wrong by the defendant then the same primary right is at stake even if in the second suit the plaintiff pleads different theories of recovery, seeks different forms of

---

assume that Plaintiff meant Title VII of the Civil Rights Act of 1964. *Id.; see also Levy v. Primerica, Inc.*, No. 5:16-cv-01254, 2016 WL 1698028, *2 (N.D. Cal. Apr. 28, 2016) (analyzing plaintiff's "Title XII" employment discrimination claim under Title VII and dismissing because persons with criminal records are not members of protected class). Plaintiff's claims for "harassment," "disparate impact," and "hostile work environment" could conceivably serve as the bases for federal court jurisdiction despite Plaintiff's allegations that "Defendants were inconsiderate and in violation of *California* employment laws in their treatment of Plaintiff." *Id.* ¶¶ 69, 90, 111 (emphasis added). Plaintiff cites no basis—federal or state—for his "disparate treatment" claim. *Id.* ¶¶ 160–64.

relief and/or adds new facts supporting recovery." *Eichman v. Fotomat Corp.*, 147 Cal. App. 3d 1170, 1174–75 (1983) (quoting *Slater v. Blackwood*, 15 Cal. 3d 791, 795 (1975)). A "primary right" is defined as the "right to be free from the particular unlawful conduct." *Clark*, 785 F.2d 781, 784 (9th Cir. 1986).

Three requirements must be met for claim preclusion to apply: (1) there must have been a final judgment on the merits in the prior case; (2) the prior case involved the same parties or parties in privity; and (3) the second lawsuit must involve the same "cause of action" as the first one. *See San Diego Police Officers' Ass'n*, 568 F.3d at 734; *Boeken v. Philip Morris USA, Inc.*, 48 Cal. 4th 788, 797 (2010).

> The doctrine of res judicata provides that "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." The application of this doctrine is "central to the purpose for which civil courts have been established, the conclusive resolution of disputes within their jurisdiction." Moreover, a rule precluding parties from the contestation of matters already fully and fairly litigated "conserves judicial resources" and "fosters reliance on judicial action by minimizing the possibility of inconsistent decisions."

*In re Schimmels*, 127 F.3d 875, 881 (9th Cir. 1997) (quoting *Montana v. United States*, 440 U.S. 147, 153 (1979)); *see also Clements v. Airport Auth.*, 69 F.3d 321, 330 (9th Cir. 1995) ("Preclusion doctrine encompasses vindication of both public and private interests. The private values protected include shielding litigants from the burden of re-litigating identical issues with the same party, and vindicating private parties' interest in repose. The public interests served include avoiding inconsistent results and preserving judicial economy.").

Defendant argues that each of the factual allegations in paragraphs twelve through forty-seven is substantively identical to allegations in Plaintiff's Second Action. *See* ECF No. 8-1 at 8. Therefore, as Defendant argues, "[a]ny claim that arises from those facts that have already been or should have been adjudicated (in this case, all of Plaintiff's claims) must be barred under the doctrines of res judicata (claim preclusion) and collateral estoppel (issue preclusion)." The Court agrees that claim preclusion bars much of the present action. As to the remaining potentially federal claims, Plaintiff's "new" allegations do not set forth facts that are material to any viable claim.

### 1.     <u>Final Judgment on the Merits</u>

There was a final judgment on the merits in the Second Action. *See* ECF No. 8-3, Ex. G at 129. On January 9, 2018, the Stanislaus Superior Court sustained without leave to amend Defendant's demurrer to Plaintiff's Third Amended Complaint. *See id.* The Superior Court took judicial notice of the fact that Plaintiff failed to timely file a claim required by the Government Claims Act, rejecting Plaintiff's argument that the "continuing violations" doctrine salvaged his causes of action based on "discrete acts alleged to have been committed outside the applicable statute of limitations." *See id.* Thus, the superior court held all the causes of action in Plaintiff's Third Amended Complaint were time barred. *See id.*

"The Supreme Court has unambiguously stated that a dismissal on statute of limitations grounds is a judgment on the merits." *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 322 F.3d 1064, 1081 (9th Cir. 2003) (citing *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 228 (1995)). "[F]or purposes of applying the doctrine of res judicata . . . a dismissal with prejudice is the equivalent of a final judgment on the merits, barring the entire cause of action." *Boeken*, 48 Cal.4th at 793. Therefore, because the Stanislaus County Superior Court held that Plaintiff's causes of action in his Third Amended Complaint were time barred and sustained Defendant's demurrer without leave to amend, there was a final judgment on the merits.

### 2.     <u>Same Parties</u>

The First and Second Actions involved the Plaintiff and Defendant. *See generally* ECF No. 8-3, Exs. C & F. While Plaintiff argues that the Second Action included one additional defendant, Steven Choi, this does not change the fact that both Plaintiff and Defendant in this case were parties to the prior action. *See Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 711, 713 (9th Cir. 2001) (noting same parties involved in both actions where same two plaintiffs sued hospital, hospital supervisors, and union in first action and only sued hospital in second action). Therefore, this Court finds the same parties are involved in the First, Second, and Third Actions.

### 1.    Same "Causes of Action"

#### a.    Paragraphs 12 through 47 of the Third Action

All allegations from the First, Second, and Third Actions stem from Plaintiff's August 28, 2009 arrest. *See* ECF No. 10 at 2, 5 (Plaintiff states "[t]here is no doubt that plaintiff has brought prior actions against this defendant, it is not denied and clearly a matter of which the court takes judicial notice" and the prior allegations are "provided as background to the long history of harassment and discrimination suffered by plaintiff"). Paragraphs 12 through 47 of the Third Action are virtually identical to allegations from the Second Action. *See generally* ECF No. 1 ¶¶ 12–47; ECF No. 8-3, Ex. F.

Because the Stanislaus County Superior Court dismissed every cause of action with prejudice in Plaintiff's Third Amended Complaint in the Second Action, this Court need not re-consider these duplicative allegations in this Third Action. *See San Diego Police Officers' Ass'n*, 568 F.3d at 734 ("a valid, final judgment on the merits precludes parties or their privies from relitigating the same 'cause of action' in a subsequent suit.") Plaintiff had his chance to litigate his claims for harassment; disparate impact; hostile work environment; failure to prevent harassment, discrimination, and retaliation; and disparate treatment. He also had the opportunity to assert his employment discrimination claim based on the same facts but did not. Therefore, res judicata bars Plaintiff's allegations in paragraphs 12 through 47 of the Complaint.

#### b.    "New" Allegations

Plaintiff raises "new" allegations he contends represent "new and ongoing wrongs committed and perpetrated by defendants." ECF No. 10 at 1. These "new" allegations, however, are insufficient to avoid application of res judicata. Courts have rejected claims under res judicata where plaintiffs raise "new" allegations with different dates from the prior action, yet are factually similar to previously litigated claims. *See Gospel Missions of Am. v. City of Los Angeles*, 328 F.3d 548, 558 (9th Cir. 2003); *Misischia v. St. John's Mercy Health Sys.*, 457 F.3d 800, 802–03, 805 (8th Cir. 2006); *Yagman v. Garcetti*, No. 2:16-cv-05944, 2017 WL 2115814, *1–2, *4 (C.D. Cal. May 2, 2017). Courts have

reasoned that where the "new" facts add nothing materially distinct but rather merely comprise the same course of conduct in previously litigated claims, application of res judicata is proper. *See Misischia*, 457 F.3d at 805; *Dubuc v. Green Oak Twp.*, 312 F.3d 736, 751 (6th Cir. 2002); *see also Clark v. Yosemite Community College District*, 785 F.2d 781, 787, 789 (9th Cir. 1986).

In *Misischia v. St. John's Mercy Health* Systems, the Eighth Circuit held that res judicata barred a doctor's claims against his former employers who terminated him following reports of inappropriate patient contacts. *See Misischia*, 457 F.3d at 802–03, 805. The doctor filed a state court lawsuit against the hospital alleging various state tort claims, asserting that defendants' actions of suspending, terminating, and preparing an adverse report on him referencing a psychiatric evaluation, were retaliation for the doctor's whistleblowing efforts. *See id.* The trial court held the hospital was immune from suit and the appellate court affirmed in 2000. *See id.* at 803. In 2001, the doctor requested the hospital to remove any reference that he underwent a psychiatric evaluation in its report. *See id.* The hospital agreed, conditioned upon the doctor's payment for costs of suit. *See id.* The doctor sued the hospital again, but the District of Columbia District Court dismissed the suit as time-barred. *See id.* The doctor filed another action against the hospital in the Eastern District of Missouri District Court for Racketeer Influenced and Corrupt Organizations Act (RICO) and civil conspiracy claims, describing "every aspect of the parties' dispute from [the first lawsuit] and then allege[d] 'various adverse professional incidents' involving other physicians" at the hospital. *See id.* at 803. The RICO cause of action relied upon numerous events that occurred in the mid-1990s as well as three "extortionate" letters exchanged with counsel for defendants in 2001 and 2002, leading to the doctor's payment of costs in 2001. *Id*. at 805.

The doctor attempted to avoid application of res judicata to his RICO claim by asserting that the claim could not have been brought earlier because the pattern of racketeering activity was not sufficient to state a claim until the new allegations were added in. *Id*. at 804. The Eighth Circuit rejected this argument, reasoning that acts occurring after the 2000 appellate court judgment, including the hospital's

"extortionate" demands for the doctor's payment of costs, were only tangentially related to the conduct that led to the initial lawsuit. Because it was the earlier conduct that "caused the bulk" of the doctor's injuries, the new allegations added "little if anything to his RICO claims." *Id.* at 805. Therefore, whether or not sound, the RICO claims could have been raised in October 1994." *Id.* "The doctrine of res judicata would become meaningless if a party could relitigate the same issue . . . merely by positing a few additional facts that occurred after the initial suit." *Misischia*, 457 F.3d at 805 (three "extortionate" letters from 2001 and 2002 were so unrelated to events of 1993 and 1994 *as to add nothing to the showing that the earlier acts reflected "a threat of continued racketeering activity,"* the prerequisite of a RICO claim) (emphasis added).

Other courts have likewise rejected plaintiffs' attempts to introduce "new" facts to avoid the res judicata bar. In *Yagman v. Garcetti*, the Central District of California rejected a plaintiff's third lawsuit regarding the issuance of parking tickets despite the latest parking ticket issued while the first two lawsuits were on appeal. *See Yagman*, 2017 WL 2115814, at *1–2. The *Yagman* plaintiff stated that the latest ticket was part of the same alleged conspiracy and unconstitutional system that formed the basis for the prior two lawsuits. *See id.* at *4. The district court reasoned if "Plaintiff were permitted to renew the same challenge every time he receives a new parking ticket, it would be in direct conflict with the principles of res judicata." *Id.*; *see also Scott v. Donahoe*, No. 2:13-cv-03927, 2014 WL 4180961, at *5–8 ("Plaintiff cannot relitigate his claims by simply alleging a few additional facts" in fourth lawsuit stemming from same shoulder injury and including claims identical to those in prior three lawsuits); *see also Gospel Missions of Am. v. City of Los Angeles*, 328 F.3d 548, 558 (9th Cir. 2003) ("There is no new claim; instead there is a new fact supporting an old claim. 'An action that merely alleges new facts in support of a claim that has gone to judgment in a previous litigation will be subject to claim preclusion.'"); *Boeken*, 48 Cal. 4th at 798 (holding res judicata barred wife's wrongful death action against tobacco company after husband passed away because wife's prior loss of consortium action (while husband was alive) involving same primary right, including loss of companionship and affection,

was dismissed with prejudice) (internal quotation marks and citations omitted, emphasis in original); *see also Clark v. Yosemite Community College District*, 785 F.2d 781, 787, 789 (9th Cir. 1986) (dismissing federal claims alleging same causes of action as previously adjudicated state court suit, but allowing matter to proceed based on new conduct where prior lawsuit lacked sufficient factual record to determine "whether new facts or conditions have intervened"); *Dubuc v. Green Oak Twp.*, 312 F.3d 736, 751 (6th Cir. 2002) ("When, as here, it is obvious that the alleged ongoing retaliation is actually the defendant continuing on the same course of conduct, which has previously been found by a court to be proper, a subsequent court must conclude that the plaintiff is simply trying to relitigate the same claim.").

Guided by these principles, the Court will examine each of Plaintiff's "new" allegations from the Third Action.

### (1) Yelling at Plaintiff

In April 2018, the dean allegedly yelled at Plaintiff with her office door open about contacting the chancellor regarding the shooting simulator that had not been installed. *See* ECF No. 1 ¶ 48. Plaintiff later alleges the dean acknowledged wrongdoing for yelling at Plaintiff with her door open. *See id.* ¶ 50. Yelling does not rise to the level of an adverse employment action. *See Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1052 (2005) (holding adverse employment action must materially affect the terms, conditions, or privileges of employment to be actionable). Therefore, this "new" fact is not material to any viable claim.

### (2) Installation of Shooting Simulator

Plaintiff alleges that "[a]s of September 9, 2018, [Plaintiff's] inquiry with [the dean] about installing a shooting simulator in a classroom was ignored." *Id.* ¶ 49. Plaintiff previously complained about not having access to the program's shooting simulator in his Second Action. *See* ECF No. 8-3, Ex. F ¶¶ 33, 38, 42. Therefore, Plaintiff's "new" allegation is no more than an extension of his prior claims. *See Gospel Missions of Am.*, 328 F.3d at 558.

### (3) **Department Chair**

Plaintiff alleges the dean admitted the need for a department chair, which was Plaintiff's prior role, but that Plaintiff was "not respected" and needed to earn respect before being assigned as lead. *See id.* ¶ 52. In his Second Action, Plaintiff previously alleged Defendant engaged in wrongdoing because he was entitled to be restored as department chair. *See id.* ¶¶ 13, 20, 28, 47, 101. Therefore, res judicata bars Plaintiff's attempt to raise "new" claims relating to the department chair position. *See Gospel Missions of Am.*, 328 F.3d at 558.

### (4) **Selling Firearms Without Plaintiff's Input**

Plaintiff claims he was harmed because the department sold firearms at an auction without Plaintiff's input on an unspecified date. *See* ECF No. 1 ¶ 53. Plaintiff contends this decision should have been made by the department lead, which was his position. *See id.* "The equipment was neglected and damaged, putting [Plaintiff] at risk of blame; another set up." *Id.* The Complaint does not provide any indication as to when this "new" fact occurred. *See generally* ECF No. 1. Assuming it occurred after the Second Action concluded, this allegation does not rise to the level of an adverse employment action. *See Yanowitz*, 36 Cal. 4th at 1052. Therefore, this "new" fact is not material to any viable claim.

This allegation is also related to Plaintiff's allegation in the Second Action, claiming that department professors failed to inform Plaintiff of a $7,300 purchase for program equipment. *See* ECF No. 8-3, Ex. F ¶ 39. Therefore, Plaintiff's "new" allegation is no more than an extension of his previously litigated claim. *See Gospel Missions of Am.*, 328 F.3d at 558.

### (5) **Defamatory Employee File**

Plaintiff claims his employee file is "defamatory," which includes "criminal related information . . . and omits the numerous awards and accolades earned," and "would harm [Plaintiff] should he seek employment elsewhere." ECF No. 1 ¶ 54. Plaintiff's Second Action similarly included a claim for libel or slander. *See* ECF No. 8-3, Ex. F ¶¶ 81–97. In his Second Action, Plaintiff alleged "Defendants published false statements of fact without privilege or permission of any sort, consisting of statements

that depict plaintiff as an immoral and unethical individual, grounded in the allegations made against plaintiff as they related to his criminal matter, though he successfully defended said matter." *Id.* ¶ 87. Plaintiff asserted that the "statements [were] defamatory and harmed plaintiff's personal and business reputations," and that Defendants "acted with malice and intent to harm plaintiff in his employ." *Id.* ¶¶ 92, 95. After alleging he received "1000+ Documents containing said written statements," Plaintiff stated he would "amend [the Second Action] when and as specifically discovered and identified." *Id.* ¶ 85. Therefore, Plaintiff's "new" allegation regarding his defamatory employee file is merely an extension of his previously litigated claims. *See Gospel Missions of Am.*, 328 F.3d at 558.

**(6)** **Publicizing Plaintiff's Award**

During spring 2018, Plaintiff received the Leading, Inspiring, and Fostering Education award from department students. *See* ECF No. 1 ¶ 55. Plaintiff asked the dean to inform the division that he won the award. *See id.* In August 2018, the dean e-mailed the entire division about "two white male instructors" who had received awards after Plaintiff, but posted Plaintiff's award on a lobby TV monitor. *See id.* The dean eventually e-mailed the division about Plaintiff's award in September 2018. *See* ECF No. 1 ¶ 55. This allegation does not rise to the level of an adverse employment action. *See Yanowitz*, 36 Cal. 4th at 1052. Thus, this "new" fact is not material to any viable claim.

**(7)** **Halloween 2018**

On Halloween 2018, another faculty member asked Plaintiff "what the fuck is this?" in reference to Plaintiff's costume as a "military dude" and then walked away. *See* ECF No. 1 ¶ 56. This allegation does not rise to the level of an adverse employment action. *See Thomas v. Dep't of Corrections*, 77 Cal. App. 4th 507, 511–12 (2000) (finding no adverse employment action where claims involved one-time events without facts evidencing substantial and detrimental effect on employment). Therefore, this "new" fact is not material to any viable claim.

//

//

### (8)     **Locked Study Area**

Plaintiff alleges there was a locked study area that the dean later unlocked for limited periods of time around fall 2017. *See* ECF No. 1 ¶ 57. Having a locked study area does not rise to the level of an adverse employment action. *See Yanowitz*, 36 Cal. 4th at 1052. Accordingly, this "new" fact is not material to any viable claim.

### (9)     **Retirement Benefits**

Plaintiff claims Defendant has not updated Plaintiff's retirement benefits, which shows Plaintiff as inactive for the years 2011 to 2015 and Defendant misinforms or ignores Plaintiff's requests for payroll information and files. *See* ECF No. 1 ¶ 58. Plaintiff's First Action, which included Plaintiff's claims for backpay and retirement benefits, concluded in 2018. *See* ECF No. 8-3, Ex. D at 53–54. The Stanislaus Superior Court granted summary judgment in favor of Defendant and "against Plaintiff as to the entire action and as to all the claims contained in Plaintiff's Complaint." *Id.* The superior court attached its tentative ruling, which stated "Defendant has sufficiently demonstrated that the full amount of compensation owed to Plaintiff has been paid and Plaintiff is unable to establish any further liability on the part of Defendant." *Id.* at 53, 59. Therefore, Plaintiff's "new" allegation regarding his retirement benefits showing him as inactive between 2011 to 2015 was the subject of the First Action. Accordingly, res judicata bars Plaintiff's claim. *See Gospel Missions of Am.*, 328 F.3d at 558 ("There is no new claim; instead there is a new fact supporting an old claim. 'An action that merely alleges new facts in support of a claim that has gone to judgment in a previous litigation will be subject to claim preclusion.'").

### (10)     **Plaintiff's Course Load**

Plaintiff alleges his spring 2019 schedule had seven classes instead of eight. *See* ECF No. 1 ¶ 59. He further alleges that on or around May 1, 2019, the dean created a new section for a heavily waitlisted class and appointed another professor to teach that section despite Plaintiff's senior faculty status and that Plaintiff recruited students for the class. *See id.* ¶ 61. Plaintiff's Second Action also contained complaints regarding his prior class schedules as being either overburdensome or not being assigned as

many classes as he would like. *See, e.g.*, ECF No. 8-3, Ex. F ¶¶ 17–19, 25–27. Therefore, Plaintiff's "new" allegation regarding his course load is no more than an extension of his prior claims. *See Scott*, 2014 WL 4180961, at *5–8 ("Plaintiff cannot relitigate his claims by simply alleging a few additional facts" in fourth lawsuit stemming from same shoulder injury and including claims identical to those in prior three lawsuits).

### (11)    Unpaid Courses and Administrative Leave

Plaintiff alleges he has not been paid for contracted courses and "[i]nterest owed for the time of unpaid administrative [leave] . . . ." *Id.* ¶ 63. He does not explain what courses he has not been paid for. As discussed above, Plaintiff's claim relating to the time he was on administrative leave has already been resolved. *See* ECF No. 8-3, Ex. D at 53–54, 59. Thus, Plaintiff's "new" allegation regarding his unpaid administrative leave is barred by res judicata. *See Gospel Missions of Am.*, 328 F.3d at 558.

Overall, Plaintiff's "new" allegations are insufficient to surpass the res judicata bar, or otherwise do not set forth facts that would be material to any viable federal claim. Accordingly, Defendant's motion to dismiss Plaintiff's Complaint is GRANTED.

### B.    Plaintiff's Request for Discovery

Plaintiff asserts that he is entitled to discovery before dismissal because the Court cannot look outside the pleadings on a Rule 12(b)(6) motion without converting it into a summary judgment motion and provides parties with time for discovery. *See* ECF No. 10 at 9–10. As discussed above, the Court has taken judicial notice of prior state court and administrative filings to determine whether res judicata applies. *See Hunt*, 478 F. Supp. 2d at 1160–61 ("Judicial notice may be taken of 'adjudicative facts' such as court records [and] pleadings . . . ."). Indeed, Plaintiff concedes "[t]here is no doubt that plaintiff has brought prior actions against this defendant, it is not denied and clearly a matter of which the court takes judicial notice . . . ." ECF No. 10 at 1–2. Therefore, Plaintiff's request for discovery is DENIED.

//

//

**C.     Amendment Would Be Futile**

Plaintiff requests in nearly every section of his opposition for the Court to grant leave to amend. *See generally* ECF No. 10. Nowhere in each request explains how amendment would cure the numerous deficiencies. While leave to amend generally is granted liberally, the Court has discretion to dismiss a claim without leave to amend if amendment would be futile. *See Reyes v. Kaiser Permanente*, 782 F. App'x 605, 606 (9th Cir. 2019) (dismissing claims barred by res judicata and holding amendment would be futile); *Rivera v. BAC Home Loans Servicing, L.P.*, 756 F. Supp. 2d 1193, 1197 (N.D. Cal. 2010) (citing *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996)); *Dommisse v. Napolitano*, 474 F. Supp. 2d 1121, 1129 (D. Ariz. 2007) ("Because of *res judicata*, this is a case where no amendment can cure the defects"). Accordingly, the Court finds leave to amend is not warranted and dismisses Plaintiff's Complaint with prejudice. Therefore, Defendant's motion for order requiring Plaintiff to post security is DENIED as moot.

**D.     Supplemental Jurisdiction**

"[D]istrict courts may decline to exercise supplemental jurisdiction over a claim . . . if the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims." *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)); *see also Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193, 1196 (9th Cir. 2016) ("No motion, timely or otherwise, is necessary: ultimate responsibility to ensure jurisdiction lies with the district court."). As all federal claims have been dismissed, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.

//

//

# V. <u>CONCLUSION</u>

Based on the foregoing:

1.  Defendant's motion to dismiss is GRANTED with prejudice.

2.  Defendant's motion to strike is DENIED as moot.

3.  Plaintiff's request for discovery is DENIED.

4.  Defendant's motion for order requiring Plaintiff to post security is DENIED as moot.

The Clerk of the Court is directed to CLOSE this case.


IT IS SO ORDERED.

Dated:   **December 16, 2019**          **/s/ Lawrence J. O'Neill**
                                   UNITED STATES CHIEF DISTRICT JUDGE